Our first case today is 2016-1723 Batson v. Shulkin. Mr. Carpenter, please proceed. May it please the court, Kenneth Carpenter appearing on behalf of Mr. Phyllis Batson. Your Honor, in this case the Veterans Court made a clear error of law when it permitted the use of the implicit denial rule by the Board of Veterans' Appeals in adjudication of Mr. Batson's appeal of the effective date assigned for his award of special monthly compensation. Mr. Batson took a direct appeal of the effective date assigned by the VA for his award of special monthly compensation based upon his need for aid to attendants. This was the proper way for him to have obtained a direct review of his assertion that his award was based upon the need of aid to attendants based upon a claim or issue that was first raised in 1993 with his initial application. That application was made for pension. This court in the most recent Andrews case explained that the implicit denial rule as a legal matter requires that there be knowledge of the existence of a claim, adjudication of a claim, and notice of the adjudication to the veteran of that claim. Mr. Carpenter, I think you've made a compelling argument with respect to the implicit denial aspect of this case, and it's almost outrageous what has transpired here and what this poor veteran has had to go through with this 24-year-old claim. But as I understand it, and correct me if I'm wrong, the implicit denial aspect of this case is relevant to the effective date of his claim, correct? You're trying to push back the effective date? Well, he was awarded initially pension, then he was awarded compensation, and then he was awarded special monthly compensation, which is the matter at issue in this case. Right. And you're trying to push the effective date of the special compensation back to 1993. From 2000, which is its current effective date, to 1993, that's correct. But the board made a fact-finding that there's no evidence to support his determination of blindness under the two regulations that are in play here prior to 2000, or 2005, I think. You said 2000, but isn't it 2005? I'm confused. Maybe you could explain that part. Well, in the 2005 decision, Your Honor, when they made the assignment of the effective date for the award of special monthly compensation, they actually took it back to the 2000 date. Do you have a cite for that? Yes. In the record, I believe it's Appendix 43, you will see that the K-1 entitlement for special monthly compensation under 38 U.S.C. 1114, subsection K, is effective from 2006 to 2000. Okay. Where is that? I'm sorry. 43. Okay. But that's the 10%. Is that the amount for purposes of A and A, really? Yes, it is, Your Honor, because that's under subsection K. And subsection K of 1114-S is the special monthly compensation. So did the Board err, then, on page 205 of the appendix, which is the 2014 decision, the Board says at the bottom, why don't you start on 204 of your appendix, the Board says at 204, even assuming without conceding the claim remained pending and unadjudicated, the claim for an earlier effective date still fails, as the evidence, blah, blah, blah, shows there was nothing before May 13, 2005. Are you telling me that he was awarded compensation in 2000, but this Board made a fact-finding there was no evidence prior to 2005? I'm confused. Do you understand my confusion? I do understand your confusion, Your Honor, and I believe that the Board was confused likewise. The unusual nature of this case was that there were successive claims that dealt with separate issues. The grant for the difference between pension, which means it wasn't related to service, although in this case it was related to VA medical treatment, which was the cause of his injury to his eye, that compensation was granted or moved from pension in 2000, or based upon a 2000 claim. Later, in 2005, he then filed a claim for the aid and attendance portion. When they granted it in the decision in 2005, May 2005, they gave an effective date according to this rating decision as Appendix 46 of March 6, 2000. I'm going back to Appendix page 43. There's two different things listed there near the bottom. There's the one that says pension entitlement decisions permanent in total from 3-6-2000, which I think you were referring to earlier, but then there's also something that says special monthly pension, veteran A&A, not at government expense from 5-13-2005. What's that second part about, and how does it relate to the claim at hand today? Those are references being made to the award of pension. The award of pension was made in 1993. At that time, the loss of use of the eye, based upon his visual acuity, was granted at that time at a 10% rating. That is a separate award from the main award, if you will, for the bilateral detachment that he was granted pension for and found to be totally and permanently disabled. When that award was made, they made a partial grant of special monthly compensation, but not the full grant or the secondary grant, if you will, for aid in attendance. That aid in attendance was in fact awarded by this May 2005 decision, at least as I read the record, Your Honor, and I think that Judge Moore has correctly pointed out that contradicts the finding made relative to aid in attendance that was made by the board in an earlier board decision. But again, it doesn't answer the question. I guess you've confused me enough that I really need an answer. Has he been receiving the A&A portion of the pension from May 13, 2005, forward-looking, or has he been receiving that portion of the pension from March 6, 2000, forward-looking? Based upon my reading of the record, Your Honor, he has been receiving that since 2000, based upon the entry under the heading special monthly compensation in the center of the page where it refers to K-1. K-1 is an award of aid in attendance. Both of those special monthly compensation days are indicated not with separate dates, but with a single date from March 6, 2000. So he couldn't have gotten K-1, special monthly compensation, from March 6, 2000 unless he had established A&A entitlement as of that date? That's correct. That's very interesting. And I think that frankly, Your Honor, reflects the mishandling of this case from the beginning and the disregard for the evidence that was in there in relationship. Well, and unlike a lot of cases, Mr. Carpenter, where you seem to be at odds with the government, it seems that the government agreed with you on three separate occasions that the board mishandled this case and that you filed joint motions for remand. Out of curiosity, I believe those were filed before your involvement in this case? That's right, Your Honor. I didn't want to make that clear. No, that's fine. But who drafted them, to your knowledge? Were they drafted by the government? By the government. Drafted by the government. And so when we interpret stipulations or contracts, we generally interpret them against the drafter, don't we? Yes, Your Honor. So if there is any confusion in those stipulations at all, that would really be on the government, not on Mr. Batson. Yes, Your Honor. And he was not represented by counsel. So there is an entry of representation earlier on, but it looks like it's a union rep. I don't know if they're called union reps. Thank you. It looks like it's not an independent lawyer. It's somebody that just helps claim processing. No, that's correct. And to be fair, Your Honor, I believe that the counsel below, in entering into these joint remands with the government, simply misunderstood the way in which the implicit denial rule operated. And in the prior remand, it was sent back for consideration under the implicit denial rule, based upon the criteria set out in the Cogburn. But this is not an implicit denial case, because there was never an adjudication. And without an adjudication, there can't be an implicit denial. Now, I'm sorry. The reason I asked about the evidence with respect to the ANA portion of this claim is that it seems to me, whether it's 2000 or 2005, there were fact findings made with respect to the evidence that would support his qualification for some ANA under the two regulations that are in play. Obviously, we don't have jurisdiction to address any questions of fact or the application of law to fact. No, you do not, Your Honor. So my point is that if there's a fact finding here, whether it's right or wrong or confused or inconsistent, there were fact findings that we can't address that would foreclose going back any farther than the effective date of the evidence. But, Your Honor, those fact findings are inconsistent with the board's reliance upon the implicit denial rule. The implicit denial rule says it doesn't make any difference what happened before. So those fact findings are not relevant because there was a denial. And you had an obligation, Mr. Ventren, to appeal that decision. He did not appeal it. Therefore, it became final. So just to be clear, you think that their subsequent decision where they say, even assuming without conceding the claim remained pending and adjudicated, you think all the rest of that is suffering from the infirmity of their errors under the implicit denial rule and that if we were to agree with you on implicit denial, we ought not to look at this as an alternative conclusion but rather one that suffers from some of the same infirmities? Is that your idea? Now, let me ask you one other question relevant to this, which is when a veteran files a claim, I'm trying to understand the nature of how the system works in terms of effective filing date. And I understand that there's a regulation that says whether it's an original claim, a reopened claim, or a claim for increase, the effective filing date is the earlier of either of two things. When the original claim was filed, I'm sorry, can I ask you to stop talking, please? The mic's picking you up and I can't even hear anything. It's very loud. So please don't. Anyway, so when the regulation says the earliest effective date for any of those claims would be either of two things, it's the date of the original claim or the date when entitlement arose. Now stick with me for a second. Here's my problem. If I see this case as there having been a claim in 1993 and it was never adjudicated, what does that mean for effective filing date? It was finally adjudicated in 2005 when he had presented what really looks like quite a formal repetitive claim, something he had filed earlier. I mean, doesn't the government have a duty to assist him in developing his claim? Shouldn't they at that point give him an opportunity under all of the rules and regulations to at least supplement with evidence that says, okay, now you found in my favor in 2005, now let me show you that the same infirmities that I have that require aid and assistance actually also existed in 1993? I mean, help me from a regulatory or a statutory standpoint to understand what obligation, if any, the government had to assist him in the development of a claim that they failed to recognize at the time. Well, I believe that the congressional mandate is for the VA to fully develop a claim on the merits before they decide it. The problem with this case is that they developed the claim as to the pension portion and then ignored evidence which raised the special monthly compensation aid and attendance component. And so it just simply got misplaced literally for three different adjudication cycles. In the third adjudication cycle, it was presented directly to the VA and then they granted it. That's the 2005 application along with there was a VA, was it a VA-performed examination of the veteran that I read that detailed all of the ways in which he needs aid and assistance? Yes. Was there never any similar VA examination performed in response to the claim he filed in 1993? No, there aren't. And part of the problem here is that under the original application, it is an application for compensation. The VA doesn't have a, well, excuse me, it does have a separate form for aid and attendance, but usually that's after you have become service-connected and then your disabilities increase to a level of severity. In this case, he was at that level or at least two different board decisions found that the issue was reasonably raised in 1993 of his need for aid and attendance. But the problem is, Mr. Carpenter, that seems to ask us to look behind fact findings, which makes me very, very nervous. And I guess what I'm trying to get from you is some mechanism by which I can say that the government screwed up in that they should have allowed him to present evidence or develop the claim or demonstrate since they failed to recognize the claim for so many decades. And then when finally formally presented with it, they immediately agreed that he was entitled to the relief, that is there some mechanism by which he ought to be allowed to go back and show through new evidence that I had these same problems in 93, you just didn't help me develop them or I didn't develop them because you weren't adjudicating that claim. Do you understand where I'm trying to go? I do, Your Honor, and that mechanism is precisely what he did in this case when he appealed the effective date assigned. He said, I have had this since 1993. What evidence did he put on of that? The evidence that was already of record, including his own statements that he was unable to do certain things and other people had to do those things. He didn't get a VA examination until the 2005 adjudication. So here's my problem. The VA said, we agree in 2005 you've established evidence that you can't do stuff for yourself and you need constant aid and assistance. But I guess I feel like I've looked at that evidence and it seems to have blinders on. What that evidence doesn't do is consider whether he had the same problems in 1993. That's correct, Your Honor. And so while I may not have the ability to review the record and decide whether he had or had not introduced evidence in 1993 that entitles him to an earlier effective date, is there a rule or regulation that I could interpret that suggests he ought to be given the chance to do that? Well, I think it's inherent in the VA's duty to assist. They did not assist him in 1993 by developing evidence relative to the reasonably raised issue of whether or not he was or wasn't in need of aid and attendance. And then in 2005, when he filed his notice of disagreement on the effective date, they didn't bring him in for an examination to determine whether or not he did or didn't have that level of disability requiring aid and attendance back in 1993. Did you make any claims that there was a violation of the duty to assist in this case? No, Your Honor. The duty to assist is inherent both from a statutory as well as a regulatory obligation on the part of the VA. And that's where we get back to the congressional mandate that the expectation of Congress is is that claims will be fully developed before they're decided. This case was not fully developed before it was decided in 1993. They left off that vital piece of an issue that has been conceded in two board decisions as having been reasonably raised that he was in need of aid and attendance. And that then becomes a factual question for the VA to determine anew, with the benefit of the duty to assist, to determine what his level of disability was between 1993 and 2000. Should we hear anything else? We should hear from the government. I can't see my clock. It's hidden under all my briefs. You've gone substantially over. I'll restore your rebuttal time. I didn't realize. Sorry, Mr. Carpenter. May it please the Court. Your Honors, I think it might be helpful to go over a little bit of a timeline of what occurred here because based upon what I'm hearing in argument today, Mr. Besson's argument is substantially changed because we're now talking about disability compensation instead of pension. These are two different things. Compensation has to be service-connected. Pension does not. So in 1993, Mr. Besson filed a claim for pension. In it, there included a notation, and this is on the page of the appendix 19, it said A, ampersand A, question mark, which ultimately was determined to be an implied claim for aid and attendance. Mr. Besson received three letters from September 1993 to January 1994 granting him a pension, but not granting him aid and attendance, special monthly pension on top of that pension. When did he start receiving benefits for aid and assistance? The record shows he started receiving a special monthly pension for aid and assistance, which is the subject of this appeal, on May 13, 2005. And that can be seen on page 42 of the appendix, so I'm just flipping through that right now, confirming that my timeline that I drafted, Your Honors, is correct. Yes, page 41 and 42 both say that the entitlement for special monthly pension based upon the need for aid and attendance is established effective May 13, 2005. Now the 2000 deed that, Your Honors, we're discussing with counsel for Mr. Besson was for a different claim that he filed for service connection for his body, and that is service connection that arises from an actual VA hospital, so not typical service connection that Your Honors might see. In this case, just mainly for the benefit of the students, I won't eat up your time, but it's my understanding that he went in for cataract surgery, and you're not going to like this word, but it was botched, and it left him blind entirely in one eye, nothing, and then 2,200 in the other eye. And so he's seeking compensation for he's a veteran who had a surgery at a veteran's hospital that left him far worse than when he had gone in, and this is compensation related to that. It was deemed in 2005 that he was, it was deemed right after the surgery in 93 when he filed a claim, it was deemed that he was entitled to some compensation for this. In 2005, when he presented more evidence, it was deemed he was entitled to even more compensation, and what this case is about is trying to see whether or not that more compensation should have been given to him back in 93. Correct, Your Honor. It's two different compensation schemes, and just to go a little bit more background for the sake of the students and the audience as well, we're talking about service connection, which means that the veteran was injured while in service, and then pension, which is just something that's granted for veterans, does not need to have come from his actual service. Is pension particularly for a veteran who served in wartime? Or, because I know that this particular veteran did. He served in war, and so I think he was entitled to additional. War time and the statute itself. So in 2000, Mr. Batson requested service connection for the eye that was injured during the operation, received it, and received a special monthly compensation on top of that. Now, that's a completely different standard than a special monthly pension. That falls under 38 CFR 3.350. What Mr. Batson has argued before the board, before the veterans court, and before this court, is entitlement under 3.351, special monthly pension. So I don't know why we're bringing up the 2000 day-to-day. It has no impact on a special monthly pension. It only has to do with a special monthly compensation so that Mr. Batson never appeals to the veterans court. It would never go to file. It is not currently before this court. So the question becomes, when did he first start receiving a special monthly pension? 2005. What is Mr. Batson seeking to this appeal? An earlier effective date to 1993 when he filed that original claim for a pension. But there is no evidence in the record that he might be entitled to this benefit prior to May 13, 2005, correct? That is exactly correct, Your Honor. And that's on page 209 of the appendix. The board summarizes looking at the evidence that it's seen and says that the earliest that he would have seen to be, the earliest the record shows that Mr. Batson is entitled to a special monthly pension, aid in attendance, is May 13, 2005. I have a question for you. I think that everyone agrees that the board was not aware or there's this implicitly raised claim. And there was never anyone, nobody ever reached out to Mr. Batson when he made this reference to ANA in 1993. Nobody reached out to him and said, well, this is what you need to do in order to establish ANA. Is that right? There was nothing in the record to reflect that. Would that normally happen? Well, there is a need to assist. If it was a formal claim, it might have been developed more back in 1993. But what the board looked at here, and I specifically ask the question, what did the VA do wrong to not allow Mr. Batson to bring forth evidence of entitlement before 2005? Well, on three separate occasions, the three joint motions for remand, and these are appendix pages 101, 167, and 125, the parties, the secretary and Mr. Batson, agreed to ask the court to allow appellate Mr. Batson to put forth evidence of entitlement prior to 2005 and also noted that the board could seek to do that. Where can I see? Can you show me? Let's look at the last one here, Your Honor, W167. So this is the final. There's three motions for joint remand. This is the final one before the board decision that was affirmed by the Veterans Corps. We don't have that in our appendix. You didn't give it to us. No. I don't. Mine stops at 165 and then goes to 188. Oh, I apologize for that, Your Honor. I downloaded it from the Internet. It includes these pages. Well, my bound version, which came from somebody, doesn't. Okay, go ahead. Your Honor, it says on remand, appellate will be free to submit additional evidence and argument regarding her claim. I apologize that I say her, but Mr. Batson. See, I know, and I want to point that out. One of the opinions, one of the early on board opinions, which supposedly thoroughly reviewed all of the evidence, and concluded that there wasn't sufficient evidence to establish Mr. Batson's entitlement, refers to him throughout as a her and a she. It really casts doubt on the likelihood that they thoroughly reviewed his medical evidence, because I imagine all of his medical evidence refers to him as a man. This is not somebody in the LGBTQ community, right? Not that I'm aware of. Right, so this is a person who's been a man throughout his entire time, and yet repeatedly throughout, the board refers to him as a her and a she. I assume because his first name is Phyllis. That's correct, Your Honor. That's an excellent observation, but it would note that that board decision, the secretary entered into a joint motion for remand. That's not the only one. There's lots of board decisions. I believe the last one uses he, Your Honor, and that's the one that the VA has stuck with and not asked for remand. Yes, it's absolutely unfortunate that they called Mr. Batson by the wrong name. And I apologize, Your Honor. If you're missing 166 and on, you don't have the last board decision. You don't have any of the evidence, actually, that the VA has handed on. No, no, no. You've omitted pages 166 through 187. You gave me excerpts, basically. I don't have full documents. Oh, well, Your Honor, that's a surprise to me. It is not how it appears on the file copy that the VA has received. I'll give it to you. Well, my colleagues can verify. That's what I have. But I do have the 2014 board decision, which begins, it says, introduction on 188. So I certainly have that. Well, I can speak to the House for Mr. Batson after this. I can get it from them. They apparently have it. It's just me that doesn't. So can we circle back to your question, Your Honor, of what opportunity did Mr. Batson have to put forth before the board evidence of entitlement prior to 2005? Well, we have three joint remands instructing. But this one doesn't instruct what you said it instructed. You said it instructed him to introduce evidence to establish that his ANA deficiencies predate 2005. No, no. This just says, on remand, appellant will be free to submit additional evidence and argument regarding her claim. But the claim is for an early effective date. That's what the claim is here, Your Honor. Early effective date to 1993. Now, it's a short sentence. It's a long sentence. It's referring back, obviously. It doesn't say everything in it. But the claim was for an early effective date to 1993. Now, Your Honors, this happens on pages 101, 125, and 167. And I do want to point out. Yeah, on page 101, where it appears, it just says, on remand, appellant is entitled to submit additional evidence. Full stop. That's it. Yes. I mean. It's another claim, Your Honor. No, it doesn't actually say that, actually, on page 101. It does not say that. Well, what evidence would they have submitted, Your Honor? This is a claim for a pension, an ANA earlier effective date. So. That's the only thing that was before the board at that time. I'm wondering, does that satisfy the board's duty to assist the veteran to develop a claim that he filed? If you say to a veteran, you can submit additional evidence, is that good enough to satisfy the board's duty to assist? Because the board's duty to assist doesn't just include telling the veteran what he needs to submit, which you don't do here. But it also includes helping him develop that evidence, too, doesn't it? Oh, certainly. Yes, it does. So why wouldn't your examination in 2005, for example, look backwards? Why wouldn't you have a VA examiner look at him and assess whether or not he had some of the same difficulties before 2005? That's what the board did, and you can see this reflected on page 209. No, no, those are fact findings the board made about the evidence. I'm saying, doesn't the VA have an obligation to help the veteran, or at a minimum, tell him what kinds of evidence he needs to introduce to be able to prove an earlier effective date? Well, Your Honor, that might be in the record. What might be in the record? What actually evidence was put forth by Mr. Babson. Mr. Babson, I did believe, had counsel at this time. It wasn't pro se following 2005. Certainly in 1993, a different case. He was found to be unrepresentative at that time. But certainly there is a duty to assist and help the veteran bring forth evidence to support their claim. But it is a two-way street. Mr. Babson had to put forth some evidence to what occurred between 1993 and 2005. The VA medical, all the VA had was VA medical records at that time. And I just turned to page 209. But I guess here's my problem. So the VA, in evaluating his 2005 claim, the VA did an evaluation of him. And that VA medical evaluator, examiner, listed all of his problems that he had. What that report doesn't do is talk about when these problems started. When did he first have a need for all of this additional aid and assistance? It was in the present tense only. It only analyzed what issues he had right there that day. Correct. And that's because a claim was filed in May 2015, an explicit claim, asking for a homebound examination. The individual did this evaluation, which tested to see whether Mr. Babson could use the bathroom by himself, for instance, and so on and so forth. An amalgamation of all different issues as to whether or not based upon this under 3.352A, Your Honors, whether he needed assistance on a daily basis. Isn't that Mr. Carpenter's point, that the examination that took place in 2005 understood that there was a formal claim that had been made at that time, but we now know that there was an informal claim that was made in 1993, and that informal claim counts. Yes, it absolutely does. So the question then remains that, well, had the examiners been aware of the fact that this claim was informally made all the way back in 1993, maybe their assessment would have been different. Theoretically, Your Honor, it could have been different at that time, but we can't go back and recreate that exam. But you can actually, right? Couldn't the examiner in 2005, rather than say, right now, do you need help going to the bathroom? Oh, I do. When did that begin for you? Absolutely, Your Honor, and that's exactly what happens when somebody files a claim for an earlier effective date. That's the kind of evidence we're looking for. Right, so why didn't you do it? It was done, Your Honor. Where? I don't see any evidence that the medical examiner in 2005 or at any other medical examination that the VA provided, requested, asked for, determined it needed, looked backwards. Well, Your Honor, the page 208 and 209 talks about evidence the board looked at, and it goes, on the top of 209, moreover, the VA treatment records dated from 1997 to 2000. But the problem there, and we've read this, yes, we've seen this, but the problem with this evidence is the one that my colleague is putting out, is that that evidence wasn't looking. The examiners there who were doing those medical reports that the board was relying on in analyzing 208 and 209 were not looking backward at all. They were only, of course there's no evidence to show when he needed aid and assistance prior to May 2005, because that's not the examination that was being done, because nobody thought at that time that there was a claim going back to 1905. Let me read the piece of evidence they were looking at. In April 2000, record shows that he was ambulatory and in no apparent distress. That's the evidence they're looking for. Okay, wait, time out. Does that tell you whether he needed help going to the bathroom? No. Does it tell you whether he needed help dressing himself? It could infer that, yes. Really? Because there's a 2000 notation in the medical record here that he had trouble dressing himself. It was never addressed by the board in any of it, anything, but it is in the brief so you know about it. There's a 2000 notation in one of his examination reports that says he had trouble dressing himself. So here's my question to you. If I was a doctor or a VA examiner and I'm evaluating you for blindness in one eye and legal blindness in the other eye, what is the likelihood, and if I'm not evaluating you, for whether you need aid and assistance in your daily life by virtue of that disability, what do you think the likelihood is that I would ask and or even note in the medical file that he needs help going to the bathroom by someone else? What are the chances I'd ask you that question? That is the only test, though. I understand that that's the example that I've brought up, but the fact that Mr. Batson is able to attend a doctor by himself to carry on the conversation, this is something the VA looks at. They have a duty to assist these veterans for medical examination. If a veteran walks in for an examination of their eyes, but is clearly experiencing shoulder pain or something like that, a doctor needs to look at that just because of the fact that they're a doctor. But that's the problem. You said clearly experiencing shoulder pain. Of course. Any health care provider who sees a person with a particular injury is going to be responsive to it. But he had a claim for A&A, which is I need assistance and aid in my daily life, and nobody in the VA recognized that that was actually a claim he was making, so the relevant questions weren't asked and none of the evidence was developed. During the time periods of the joint motions for remand, it was certainly recognized that there was a claim back in 1993 for A&A and there was an effective date claim on top of that going back to that time. That's why the Secretary entered into these three joint motions for remand. I know. The Secretary honestly did a great job throughout this process, and I have zero doubt in my mind that the Secretary believed when he entered into all these joint remands that the board was screwing up time and again, that they were taking a flippant approach to the resolution of this man's claim. I've never seen the Secretary enter into so many joint motions for remand, and it warmed my heart to see that the government was as interested in seeing Mr. Batson be protected. This is a former veteran that served our country and worse yet was rendered blind by a botched surgery performed at the VA. The government did everything right, and the board kept refusing to do what even the government told it it had to do. That's why you entered into three joint motions for remand. In the end, the board writes an opinion and just says what it says. It just seems so tremendously unfair to Mr. Batson, and it seems like the government was on his side all the way through, and it seems like the government in the end sort of gave up and said, all right, well, fourth time's a charm, I guess. We've got to kind of live with this at this point. Why? Why did the VA do this? Why was the board so hell-bent on denying this veteran benefits, which even the government repeatedly corrected them they needed to address, they needed to focus on? I mean, there's stuff in those joint remands that seem pretty strongly worded about the government's belief that the evidence he provided of not being able to drive is the kind of evidence, hint, hint, that ought to give you A&A assistance. I mean, I felt like the government was advocating on his behalf in these joint remand orders, and yet the board just kept saying, nope, not doing it. I'm not giving her that aid. Right, and I realize that I'm far over my time here, but just, I guess, to sum up, we've gotten very far into the facts here, Your Honor, and we believe that there is no jurisdiction to entertain these types of issues. But I would note that in the final board decision, Mr. Batts at this point had three opportunities to request information, to provide information regarding his plan for an effective early date. But do you have an obligation to help him develop that information? Absolutely, and there's nothing, no evidence in the record that I've seen that he asked for something. Is that the way it has to work? Tell me, because I don't know, and I want to know. If Mr. Batts wanted a second examination, he could have requested one, yes. How did he get the first examination? He filled out a form for a homebound examination, I believe is the short way of saying that form, and submitted it. It is a special type of examination, not the typical service compensation examination. Okay. So Mr. Batts had three opportunities to report the additional evidence. The board, we believe, finally did the right thing in the last decision. Oh, no, you don't think they finally did the right thing. You wouldn't have filed all those joint motions for remand. You were personally involved in it. I'm sorry, I'm very clear which board I'm talking about, page 209. That's where the board got it right. I don't think the government thinks the board got it right. I just think the government thinks he wrote a bulletproof opinion. Based on all your joint motions for remand, I am convinced the government thinks Mr. Batts should have gotten his benefits. I've seen nothing to reflect that in the record, Your Honor. Should I read from the joint motions for remand? Well, I mean, Your Honor, I understand the argument regarding the last joint motion for remand and what it says. It says to evaluate him under 3.35C1C3 because that wasn't done. We agree with that, absolutely agree that Mr. Batts, until the last board decision didn't get his, I'd say, day in court, would be an expression to describe that, the board hadn't taken a fair look at the evidence. We believe that the board finally took a fair look at the evidence, which can be seen on page 208 and 209, the evidence that was put forth based upon all these joint motions for remand. So, you know, I know harmless error is a fact issue and it's something that we don't bring up before this court, but if there is a remand, it's the same evidence this board has already looked at. And there's no evidence in his medical records, no evidence he's put forth, that Mr. Batts was entitled to an aid and attendance payment prior to 2005. All right. Thank you, Your Honor. Thank you very much. Let's give Mr. Carpenter a chance to have rebuttal. There's really just one point that I'd like to address here, and that's the reference made by the government to two different, I believe they refer to it as compensation schemes. I think it's important to understand here that there is no legal difference, the legal standard for what is required to award aid and attendance for purposes of pension versus purposes of compensation is exactly the same. So, in trying to focus this court's attention on how this case came before the board and the lower court. But you said page 43, where it says K-1, special monthly compensation, that K-1 is ANA. Yes, it is, Your Honor. How do I know that? Where can I find that out? 1114-K in the statute. 38 U.S.C. 1114-K is the statutory basis for the award of aid and attendance for compensation. Statutory basis. Does it actually say aid and attendance? Yes, it does. Those are the words that it uses. And it explains that a person must be in need of aid and attendance in order to qualify. There are a number of other qualifications. How in the world, though, does this form 43, how can you reconcile what it says when it grants certain benefits to March 6, 2000, which you are saying are ANA compensation benefits, versus what it appears to say is the monthly pension only kicks in as of 5-13-2005? What I'm trying to explain, Your Honor, is that there is no distinction between the evidentiary requirements to get qualified for aid and attendance for pension purposes than there is to qualify for aid and attendance for compensation purposes. The legal qualifications, the legal standard, the evidentiary proof required to award that benefit is the same. It doesn't change because at the time, and there's no dispute, between 1993 and 2000, this veteran was not receiving service-connected compensation. He was receiving non-service-connected pension because he was a wartime veteran and because the VA found him totally and permanently disabled as a result of the surgery performed by the VA. Does that mean when they find totally and permanently disabled, he's getting 100% at that point? For pension purposes, yes. There is only one payment for pension. You are either qualified for pension and receive the full amount. It's a needs-based program, so there's dollar offsets if you have other income. But you are only paid at the total rating. So when did he start getting paid at the total rating? In 1993, when he made his first application. Wait, if he started getting full pension in 93, why was he appealing for more? I don't understand. I'm just confused by the facts. Okay. Pension is a needs-based program that does not relate to either a service-connected injury or disease or to an injury sustained as a result of VA medical treatment. In 2000, he made his claim for compensation, which changed his rate by probably $2,000 to $3,000 per month for the amount that he was receiving for $1,000 to $2,000 a month over what he was getting for pension. The maximum benefit he gets for pension is set by statute. It's like $600 and something a month or something like that. In 1993, it probably would have been close to $1,000 or $1,200 a month, and it would have been dependent, whereas the compensation in 1993 for compensation purposes would have been over $2,000 per month. So although they are different statutory schemes, pension versus compensation, the entitlement to the benefit that is sought here, aid and attendance, is identical under both schemes. Is this a mistake, then, in the rating decision on page JA43? I mean, because it treats one as starting being effective from May 13, 2005, and the other as being effective March 6, 2000, and you're saying the evidence to prove both would be the same. The way that I read that decision is that when they granted the benefit in 2005, they took the effective date back for aid and attendance, not to the date of the claim in 2005, but to the date of the original claim for compensation in 2000. But they didn't go back to 1993. But they did not go back to 1993. So are you representing that he has been getting the same amount of money? It came in the form of back pay, but basically from 2001 he's been getting the same amount of money, meaning there wasn't a big jump in 2005 if you put the back pay. I assume he got back pay then. Yes, he did. If you put the back pay in. Although, as I recall, he was granted the benefit of literally the same month that he made the application in 2000. I'm not sure what the difference was. Okay, well, is there anything further? No, there's not. Okay, thank you. I thank both counsel. This case is taken under submission. Both counsel did a very effective job of helping the court understand a complicated history and background. So thank you both. Thank you.